## DONALD *v.* FAULDS.

1. BAILMENT—STORAGE OF HOUSEHOLD GOODS.

   Record *held,* devoid of proof that defendants agreed to store plaintiffs' household goods in any particular place or become responsible for any damages which might result from improper storage or care.

2. LANDLORD AND TENANT—TENANCY AT WILL.

   When one party moves onto another's premises without any understanding as to the length of the tenancy, a tenancy at will would be the greatest interest such action would create.

3. SAME—TENANCY AT WILL—SURRENDER—ABANDONMENT.

   If a tenant at will vacates the premises, it will be treated as a surrender to the landlord, or, if the tenant at will abandons them, it will be presumed he abandoned the possession to his landlord.

4. SAME—TENANCY AT WILL—EVICTION.

   Fact that person who had, at most, a tenancy at will in defendants' premises left premises at request of the defendants would not constitute an eviction.

5. CONTRACTS—EVIDENCE—TENANCY—EMPLOYMENT.

   In action for breach of alleged contract of tenancy or of hiring under which plaintiff sought to recover damages for what might have been done during following season at rural lakeside resort where boats and cottages are rented, chickens raised, and orchards and farm operated, plaintiffs *held,* not to have proved a contract.

Appeal from Wayne; Sample (George W.), J., presiding. Submitted June 4, 1942. (Docket No. 26, Calendar No. 42,013.) Decided July 1, 1942.

Assumpsit by Fred S. Donald and wife against William H. Faulds and wife for breach of an alleged contract. Judgment for plaintiffs. Defendants appeal. Reversed without a new trial.

*Welsh & Hill,* for plaintiffs.

*Earl N. Nash, Benjamin Marcus,* and *George A. Gray,* for defendants.

BOYLES, J. Defendants own and reside on a farm with lake frontage near Howell, in Livingston county, rent boats and cottages, raise chickens, run two orchards, conduct farming operations. In 1937 they advertised for a tenant, an experienced chicken raiser, to help with the work. Plaintiffs, residents of Detroit, answered the advertisement, and claim that an oral agreement was entered into whereby they were to be either tenants or employees, were to move onto the farm, that defendants were to furnish the entire stock, tools, equipment, give plaintiffs and their 19-year-old son board and room until a tenant house could be built, provide 200 pullets for the egg business, take care of plaintiffs' moving expense, store their furniture, and divide with plaintiffs 50-50 the entire income from the boat and cottage rentals, chicken business, orchards, and farm operations. Defendants deny any agreement was ever reached between the parties.

Plaintiffs did, however, move onto the farm about October 1, 1937. There was only one house and plaintiffs moved into the house with defendants. Most of their household goods were stored in a garage on the farm, with defendants' permission. Some time later, defendants offered plaintiffs a

written contract under which defendants were to
furnish the land and equipment, and receive two
thirds of the income. Plaintiffs declined to agree
to this, and in December plaintiffs proposed a
written contract to defendants under which defend-
ants were to furnish all stock, tools, materials, and
equipment, the proceeds to be divided 50–50, which
defendants declined to agree to. The usual result
of two families trying to live together in one house
followed. In February, the son was asked to get a
job elsewhere, which he did. Shortly afterward,
Mrs. Donald (plaintiff) became ill, went to Detroit,
then to Pennsylvania to stay with a daughter. On
February 27th, the plaintiff Fred Donald left,
whether by request or otherwise is in dispute.
About May 1st, plaintiffs moved their furniture
away. About a year later, plaintiffs started this
action in circuit court. The sole count in their dec-
laration claims an oral contract, either of tenancy
or employment. Their bill of particulars claims
$1,410 damages for loss of money which would have
been obtained from eggs, crops, livestock increase,
boat rentals, et cetera, $459.50 damages to furni-
ture by elements and mice, $5 balance for moving
goods, $5,625.50 damages ''by reason of separation
of family, shame, humiliation, et cetera.'' Defend-
ants' answer denied existence of any contract.

The case was tried before a jury. The theory on
which it was submitted to the jury does not appear,
as the record before us contains no charge to the
jury or findings of fact. The jury gave plaintiffs
a verdict for $1,042, and from judgment entered
thereon defendants appeal.

Plaintiffs moved onto the farm the last day of
September, 1937. Plaintiff Fred Donald testified
that previous to that time the parties had several
conferences. First, Mr. Donald and Mr. Faulds
met and talked it over, and plaintiff testified:

"On this first occasion our discussion of the farm situation was just general."

They were agreed on one thing, however, their wives should be consulted, so they all met at the farm on the Saturday before plaintiffs moved to the farm. Plaintiff testified:

"This Saturday was to make the final decision. * * *

"*Q.* Would you say on this Saturday you came to a definite agreement or understanding?

"*A.* So far as Mr. Faulds and I were concerned.

"*Q.* As far as closing the deal, is that right?"

So far as shown by the record, no direct answer was made to this question. The various things Mr. Faulds was to do were discussed—building a tenant house, getting 200 more pullets. Nothing was said about the terms of the deal. On cross-examination, plaintiff testified they all met at the farm the last Saturday in September and stayed until late Sunday afternoon, and no deal was closed at that time. The parties did not meet again until plaintiffs moved onto the farm. No express contract had been agreed upon. The proposed contract submitted later by plaintiffs to defendants covered what plaintiff Fred Donald claims was the agreement. It recites: "We, the undersigned, have *this day and date,* the .............. day of December, 1937, entered into an agreement, subject to renewal at option, for the purpose farming," and proposes sharing equally in the proceeds. Many of the provisions in this proposed agreement had not previously been discussed. Defendants declined to enter into a 50–50 share arrangement and submitted a proposed written contract based on one third to plaintiffs, two thirds to defendants, to which plaintiffs refused to agree. The proofs are all to the effect that no definite arrangement as to sharing of

profits and expenses was ever agreed upon. On the essential issue of what proportion of the profits should go to each, the minds of these parties have never met. Likewise, there is no evidence of any contract of hiring between employer and employee. There was never any mention of wages. This suit is not based on the common counts and no implied contract is alleged. The record shows an entire lack of evidence tending to prove any express contract, either of rental or employment.

The record is equally devoid of any proof that defendants agreed to store plaintiffs' household goods in any particular place or become responsible for any damages which might result from improper storage or care.

Plaintiffs having moved onto the farm with the consent of defendants but without any understanding as to the length of their tenancy, the most that can be said in plaintiffs' favor is that it was a tenancy at will. *Barrett* v. *Cox,* 112 Mich. 220. In *Shaw* v. *Hill,* 79 Mich. 86, it was held:

"If a tenant at will vacates the premises, which he may do at any time, it will be treated as a surrender to the landlord; or, if he abandons them, it will be presumed that he abandoned the possession to his landlord."

It is a fair inference from the record that Mr. Donald finally left the premises at the request of Mr. Faulds. This fact, however, does not constitute an eviction. *Lawrence* v. *Rapaport,* 213 Mich. 358.

Plaintiff Fred Donald was 68 years of age when the case was tried. His life had been spent in various places—working farms, running chicken ranches and dairy farms, in Ohio, Illinois, California, and Michigan. On cross-examination, he testified he had been unemployed since leaving defendants' farm, "I had a little work for a short while but am

getting too old to work.'' No doubt the element of sympathy had a major part in the jury's deliberations. We are constrained to hold that plaintiffs have failed to prove any contract of tenancy or of hiring. The motion for judgment notwithstanding the verdict should have prevailed.

In view of the above conclusion, it is not necessary to consider the question of damages, although the general uncertainty regarding the purpose of this suit is indicated by plaintiff Fred Donald's statement ''I am asking damages for what might have been done next summer, not what was done.''

Judgment reversed without new trial. Costs to appellants.

CHANDLER, C. J., and NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.