1137 19th STREET ASSOCIATES, LIMITED PARTNERSHIP, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

District of Columbia, Appellant,

v.

1828 L Street Associates, Limited Partnership, Appellee.

Nos. 99–TX–1387, 99–TX–1398, 99–TX–1437, 00–TX–185.

District of Columbia Court of Appeals.

Argued Jan. 18, 2001.
Decided March 15, 2001.

David H. Dickieson, Washington, DC, for appellant, 1137 19th Street Associates, and appellee, 1828 L Street Associates.

Donna M. Murasky, Senior Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for the District of Columbia.

Before SCHWELB, FARRELL, and REID, Associate Judges.

SCHWELB, Associate Judge:

These consolidated cases arise out of attempts by two different taxpayers to recover recordation taxes paid, under protest, to the District of Columbia Recorder of Deeds following the recordation, in 1995, of certain deeds of trust. After having agreed on all material facts below, the parties in each case cross-moved for summary judgment. In the case brought by 1137 19th Street Associates, L.P. ("19th Street Associates"), which we shall call Case No. 1, the trial judge held that the taxpayer was obliged to pay the recordation tax, and she granted the District's motion for summary judgment. In the companion case, which was brought by 1828 L Street Associates, L.P. ("L Street Associates"), and which we shall call Case No. 2, the judge granted summary judgment in the taxpayer's favor and ordered the District to refund the full amount of

recordation tax paid. We affirm in Case No. 1, but reverse and remand in Case No. 2.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties agree that the following material facts are undisputed:

### A. *Case No. 1.*

Case No. 1 concerns square 140, lot 907, known as 1137 19th Street, N.W. in Washington, D.C. (the "19th Street property"). At all times relevant to this suit, the property has been owned by 19th Street Associates.

In June 1979, 19th Street Associates, as borrower, closed on a construction loan, with the 19th Street property serving as collateral. The construction loan deed of trust was recorded on June 14, 1979. Under the District's recordation tax statute in effect at that time, 19th Street Associates was not required to pay any tax on the recordation. D.C.Code § 45–722(5) (1973). On June 30, 1980, the amount of the construction loan was increased to $22,000,000.00. At that time, the applicable statute likewise did not require the payment of a recordation tax on the amount of the loan. *Id.*

On January 14, 1981, 19th Street Associates refinanced its construction loan with a permanent loan in the amount of $23,500,000.00. When 19th Street Associates recorded the deed of trust and secured the permanent loan with the 19th Street property as collateral, it paid a recordation tax of 1.0%, as required by

statute, on the difference between the principal of the permanent loan and the principal of the final construction loan (*i.e.*, $15,000.00 of recordation tax on the $1,500,000.00 increase). D.C.Code § 45–923(a) (1981).

On January 31, 1995, when the principal balance of this permanent loan was $22,296,975.00, 19th Street Associates obtained a new permanent loan in the amount of $22,000,000.00 to refinance the outstanding balance. When the taxpayer recorded the new $22,000,000.00 deed of trust encumbering the 19th Street property and securing its new loan, it paid, under protest, the 1.1% recordation tax, *i.e.*, $242,000.00. D.C.Code § 45–923(a) (1996) (as amended in 1994).[1] The present controversy arises from the taxpayer's claim that no recordation tax was due.

After having made this recordation tax payment, the taxpayer instituted an administrative proceeding, seeking a refund from the Recorder of Deeds. On June 2, 1996, after the Recorder had failed to act on the petition for more than six months, the taxpayer brought suit in the Superior Court for a refund. *See id.* §§ 45–935 (1996), 47–3310 (1997). The parties filed cross-motions for summary judgment. In an order entered on October 5, 1999, which resolved both Case No. 1 and Case No. 2, the judge concluded, as a matter of law, that the taxpayer in Case No. 1 was not entitled to a refund. The judge therefore granted summary judgment in favor of the District and against 19th Street Associates, holding that recordation of 19th Street Associates' 1995 deed of trust was not exempt from taxation. This timely appeal followed.

1. Unless otherwise indicated, subsequent citations to Title 45 of the D.C.Code are to the

1996 Replacement Volume.

## B. *Case No. 2.*[2]

On April 2, 1962, the 1828 L Street Joint Venture ("Joint Venture") was organized for the purpose of acquiring a leasehold interest in the property at square 107, lot 74, known as 1828 L Street, N.W. in Washington, D.C. (the "L Street property"). A few days later, on April 6, 1962, the Joint Venture, as tenant, obtained a ninety-nine-year lease of the property. The lease authorized the Joint Venture, subject to the terms of the lease, to assign its tenancy, to construct improvements on the leased property, and to mortgage or encumber the leasehold interest.

L Street Associates, the taxpayer in Case No. 2, was formed on December 30, 1967, and acquired the Joint Venture's assets. On January 30, 1968, the Joint Venture assigned its ninety-nine-year lease to L Street Associates. In January 1970, L Street Associates, as borrower, obtained an $8,000,000.00 construction loan, secured by the ninety-nine-year lease, to finance improvements on the L Street property. These improvements consisted of a commercial office building then (and now) owned by L Street Associates. At the time of the transaction, the recordation of construction loan deeds of trust was not subject to taxation, D.C.Code § 45–722(5) (1967), and L Street Associates was not required to pay any tax at the time the leasehold deed of trust that secured the construction loan was recorded.

On February 28, 1995, the construction loan had an outstanding balance of $1,073,493.28. On that date, the taxpayer refinanced that loan for an amount of $15,000,000.00. The refinanced loan was secured by the ninety-nine-year lease and by L Street Associates' ownership interest in the commercial office building it had constructed on the L Street property. The leasehold deed of trust was submitted for recordation on March 6, 1995. At that time, the recording of both construction and permanent loan deeds of trust was subject to the recordation tax. *See* D.C.Code §§ 45–921, 45–922, 45–923(a) (as last amended in 1994). L Street Associates contested its liability, but it paid, under protest, 1.1% of the entire loan amount, *i.e.,* $165,000.00, in recordation tax.

L Street Associates initially applied for a refund from the Recorder of Deeds. As in Case No. 1, more than six months passed without any action by the District on the taxpayer's administrative petition.[3] *See id.* §§ 45–945, 47–3310. On January 2, 1996, L Street Associates brought suit in the Superior Court, seeking a refund of its recordation tax. The facts not being in dispute, both parties cross-moved for summary judgment. In her dispositive order of October 5, 1999, the trial judge held that L Street Associates' 1995 leasehold deed of trust was not subject to the District's recordation tax. The judge therefore granted summary judgment in favor of L Street Associates, and she ordered the District to refund the entire $165,000.00 to the taxpayer. The District timely appealed.

---

2. Case No. 2 consists of three consolidated appeals: the District filed two protective notices of appeal and ultimately appealed from the trial court's denial of the District's motion for reconsideration. All three appeals, however, raise the same issues.

3. In its administrative and judicial pursuit of a refund, L Street Associates initially sought only a partial refund of $88,000.00, that is, the amount of recordation tax paid on the $8,000,000.00 amount equivalent to the refinanced construction loan's principal. Subsequently, however, L Street Associates amended both its administrative filing and its petition in the Superior Court to seek a full refund.

## II.

## STATUTORY FRAMEWORK

We begin with a brief review of the relevant statutory framework. Both cases under review involve the District of Columbia's Recordation Tax Act (the "Act"), D.C.Code §§ 45–921 *et seq.* (1996 & Supp. 2000). The Act imposes a tax on the recordation both of specified deeds and of security interest instruments.[4] *Id.* § 45–923(a). The tax applies only to instruments that transfer an interest in real property. Real property is defined in the Act as "every estate or right, legal or equitable, present or future, vested or contingent in lands, tenements, or hereditaments located in whole or in part within the District." *Id.* § 45–921(4). In addition, the Act provides a number of exemptions from the recordation tax.

One of these exemptions, which has been invoked by the taxpayers in both of these cases, is the "permanent loan deed of trust" exemption. The Act specifies that, "[w]hen a permanent loan deed of trust ... is submitted for recordation and the tax on the construction loan deed of trust ... has been timely and properly paid,"[5] no recordation tax is due "except where the amount of the obligor's liability secured by the permanent loan deed of trust ... exceeds the amount of his liability secured by the construction loan deed of trust." *Id.* § 45–922(11). If the amount

of the permanent loan exceeds that of the construction loan, "the [recordation] tax shall be calculated only on the amount of such difference." *Id.*

The other exemption relevant to the issues presented in these cases is the "refinancing exemption" from the 1.1% tax on the recordation of security interest instruments. *See* D.C.Code § 45–923(a)(3). Section 45–923(a)(3) provides that, "when existing debt is refinanced, the recordation tax shall only apply to the amount of any new debt incurred over and above the amount of the principal balance due on existing debt if the existing debt was ... subject to taxation under this paragraph."

These appeals require us to construe and apply the foregoing provisions. Case No. 1 involves a deed of trust through which a permanent loan was secured by the underlying property itself. That instrument is a security interest instrument, *see* D.C.Code § 45–921(14), and Case No. 1 therefore involves both the permanent loan deed of trust exemption and the refinancing exemption. In Case No. 2, the instrument at issue is a deed of trust under which the permanent loan was secured by L Street Associates' ninety-nine-year lease as well as by its ownership interest in the commercial building located on the leased property. Case No. 2 requires us to determine, first, whether such a leasehold deed of trust is subject to the District's recordation tax, *i.e.*, whether L Street As-

---

4. The Act defines a "security interest instrument" as "any instrument which conveys, vests, grants, transfers, bargains, sells, or assigns a security interest in real property." D.C.Code § 45–921(14). Security interest instruments "may include ... [a] deed of trust [or a] ... refinancing statement." *Id.* A "security interest means any interest in real property acquired for the purpose of securing payment of a debt." *Id.* § 45–921(13) (internal quotation marks omitted).

5. Prior to the 1980 amendments to the Act, construction loan deeds of trust were not subject to the recordation tax. *See* D.C.Code § 45–722(5) (1967 & 1973) (exempting "[d]eeds which secure a debt" from recordation tax); *id.* § 45–922(5) (1981) (containing modified exemption from recordation tax for "[d]eeds which secure a debt ... other than construction loan deeds of trust" and hence imposing recordation tax on construction loan deeds of trust); *id.* § 45–923(a) (1981) (imposing recordation tax on "each deed [and] construction loan deed of trust").

sociates' ninety-nine-year lease falls within the Act's definition of "real property." *Id.* § 45–921(4). If we conclude that it does, then we must consider the taxpayer's eligibility for the permanent loan deed of trust exemption.

## III.

### BACKGROUND PRINCIPLES

A. *Standard of review.*

■ "Decisions of the Superior Court in civil tax cases are reviewable in the same manner as other decisions of the court in civil cases tried without a jury." D.C.Code § 47–3304 (1997); *see also District of Columbia v. Acme Reporting Co.,* 530 A.2d 708, 712 (D.C.1987). "We review a grant of summary judgment *de novo,* applying the same standard as the trial judge." *Bullock v. Nat'l City Mortgage Co.,* 735 A.2d 949, 952 (D.C.1999) (citations omitted). Summary judgment may be granted only if "there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Id.* In the cases now before us, the parties have agreed that there is no dispute as to the material facts, and the issues that we must decide are solely questions of law. We are, of course, "free to sustain the [decision of the] trial court … on grounds different from those on which the trial court relied," *Acme Reporting Co., supra,* 530 A.2d at 712, so long as the taxpayer has "had an appropriate opportunity to respond to the District's arguments, and ha[s] suffered no procedural unfairness," *Sheetz v. District of Columbia,* 629 A.2d 515, 519 n. 5 (D.C.1993).

B. *Principles of statutory construction applicable to tax provisions.*

■ In interpreting tax statutes, we apply conventional principles of statutory construction. *Acme Reporting Co., supra,* 530 A.2d at 712 (quoting 3A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 66.03 (C. Sands, 4th ed.1986)). Consequently, "we must look first to the language of the statute and, if it is clear and unambiguous, give effect to its plain meaning." *Id.* (citation omitted). In doing so, "effect must be given every word of a statute[,] and interpretations that operate to render a word inoperative should be avoided." *Id.* at 713 (citation omitted). If we determine that the statutory language is facially ambiguous, we may then consider "the legislative history surrounding the enactment of the statute[ ] in question for assistance." *Id.* (citation omitted).

■ There are also other canons which guide our construction of these specific statutory provisions. The Act states that, "[f]or the purpose of proper administration of this subchapter [which imposes the recordation tax] and to prevent evasion of the [recordation] tax …, it shall be presumed that all deeds are taxable and the burden shall be upon the taxpayer to show that a deed is exempt from tax." D.C.Code § 45–927. Like other exemptions from taxation, *see, e.g., Dist. Unemployment Comp. Bd. v. Sec. Storage Co.,* 365 A.2d 785, 790 (D.C.1976), "exemptions from [the recordation tax] are to be construed strictly against the party claiming an exemption." *Nat'l Med. Ass'n v. District of Columbia,* 611 A.2d 53, 55 (D.C. 1992).[6] In each of the cases now before us, the taxpayer has the burden to demon-

---

**6.** Where exemptions from taxation are not at issue, on the other hand, we remain mindful of "the settled rule that tax laws are to be strictly construed against the state and in favor of the taxpayer … if the statute in controversy is unclear and ambiguous." *Acme Reporting Co., supra,* 530 A.2d at 712 (citations and quotation marks omitted).

strate that it is entitled to the claimed exemption.

## IV.

## CASE NO. 1

In Case No. 1, the taxpayer disputes the trial judge's ruling that the 1995 recordation of the permanent loan deed of trust, which was secured by taxpayer's 19th Street property, was subject to the District's recordation tax. The taxpayer contends that it was entitled to claim either of two exemptions from the recordation tax: the permanent loan deed of trust exemption, D.C.Code § 45–922(11), and the refinancing exemption, *id.* § 45–923(a)(3). We conclude, albeit partially on grounds different from those relied upon by the trial judge, that neither exemption is available to 19th Street Associates.

A. *The permanent loan deed of trust exemption.*

With respect to permanent loan deeds of trust, the Act provides as follows:

> When a permanent loan deed of trust ... is submitted for recordation and the tax on the construction loan deed of trust ... has been timely and properly paid, no additional tax liability arises under § 45–923, except where the amount of the obligor's liability secured by the permanent loan deed of trust ... exceeds the amount of his liability secured by the construction loan deed of trust ..., in which case the tax shall be calculated only on the amount of such difference.

---

7. It is also undisputed that the initial 1979/1980 recordation was of a construction loan deed of trust. *See* D.C.Code § 45–921(9). The underlying loan was secured by the 19th Street property, and 19th Street Associates had obtained the loan in order to finance improvements on that property.

D.C.Code § 45–922(11). The statute further sets forth the following definitions:

> The words "permanent loan deed of trust ..." mean a deed of trust ... upon real estate which secures an instrument made by the same obligors who made the instrument which the construction loan deed of trust ... secured, and which conveys substantially the same real estate.

*Id.* § 45–921(10).

> The words "construction loan deed of trust ..." mean a deed of trust ... upon real estate which is given to secure a loan for new real estate construction.

*Id.* § 45–921(9).

It is undisputed that the deed of trust recorded by 19th Street Associates in 1995 was a permanent loan deed of trust as that term is defined in the Act. The three loans relevant to this case (the 1979/1980 construction loan, the 1981 permanent loan, and the 1995 permanent loan) were all obtained by the same obligor (19th Street Associates), and each was secured by the 19th Street property.[7]

The taxpayer contends that the 1995 recordation falls under the permanent loan deed of trust exemption. Its argument goes as follows:

> (a) On June 30, 1980, the taxpayer recorded its final construction loan deed of trust securing a construction loan in the amount of $22,000,000.00.
>
> (b) In June 1980, no recordation tax was due on the recordation of construction loan deeds of trust, *see* D.C.Code § 45–722(5) (1973); *id.* § 45–922(5) (1981),[8]

---

8. The amendment imposing a recordation tax on construction loan deeds of trust became effective on September 13, 1980, two and a half months after the taxpayer's deed of trust was recorded. *See* D.C.Code § 45–922(5) (1981).

and there was therefore no unpaid tax. This means, according to the taxpayer, that "the tax on the construction loan deed of trust ... has been timely and properly paid," as required to make the taxpayer eligible for the permanent loan deed of trust exemption. *Id.* § 45–922(11).

(c) The 1995 recordation involved a permanent loan deed of trust which was secured by the same real property that served as collateral for the 1980 construction loan.

(d) The permanent loan deed of trust exemption therefore applies and, because the current permanent loan is in the same amount as the initial construction loan, there is no recordation tax due on the 1995 recordation.

(e) Consequently, the taxpayer is entitled to a full refund of the $242,000.00 recordation tax it paid in 1995.

The District responds that the foregoing series of steps by the taxpayer omits a crucial intervening event, which occurred in 1981. In that year, the taxpayer recorded the permanent loan deed of trust securing the $23,500,000.00 permanent loan with which it had directly refinanced its construction loan. The District argues that this intervening loan disqualifies the taxpayer from claiming the permanent loan deed of trust exemption for the recordation of its permanent loan in 1995, because the 1995 transaction replaced a permanent loan deed of trust rather than a construction loan deed of trust.

We agree with the District. It is true, as the taxpayer points out, that the statute does not say in so many words that a permanent loan must "replace" a construction loan in order for the resulting deed of trust to be eligible for the permanent loan deed of trust exemption. We are, however, required to give the statutory language a reasonable construction. *Acme Reporting Co., supra,* 530 A.2d at 712. We believe that the language of D.C.Code § 45–922(11), reasonably read, requires a direct linkage between the permanent loan and an immediately preceding construction loan. Under the exemption, a recordation tax is due on any amount by which "the permanent loan deed of trust ... exceeds the amount of [the] liability secured by the construction loan deed of trust." *Id.* This language surely contemplates a direct relationship between the two loans, without an intervening permanent loan separating the two transactions.

The statute also requires that "such permanent loan deed of trust ... shall contain a reference to the construction loan deed of trust ... and the date and instrument number where it is recorded." *Id.* The most reasonable construction of the language requiring such a reference also is that the permanent loan deed of trust exemption is available only when a permanent loan directly replaces the construction loan to which the deed refers, and not when the permanent loan replaces an earlier permanent loan which had itself replaced the construction loan.[9]

---

9. The taxpayer argues, to the contrary, that the permanent loan deed of trust need not directly replace a construction loan deed of trust. It bases this contention on the fact that in the 1981 "Technical Amendments to the District of Columbia Revenue Act of 1980," the Council deleted from § 45–922(11) the requirement that the "permanent loan deed of trust ... [be] recorded within 3 years of the date of recordation of a construction loan deed of trust." D.C.Code § 45–922(11) (1981); *see* D.C.Code § 45–922(11) (1996). According to 19th Street Associates, this technical amendment demonstrates that "the Council specifically considered the issue of whether a limitation (whether expressed as a term of years or a limitation on the number of permanent loan deeds o[f] trust for each construction loan) should apply to the exemption, and declined to impose such a provision."

Moreover, as we have noted, "exemptions from [the recordation tax] are to be construed strictly against the party claiming an exemption." *Nat'l Med. Ass'n, supra,* 611 A.2d at 55; *see also* D.C.Code § 45–927. Any arguable ambiguity in the statutory language must consequently be resolved, if reasonably possible, in favor of the District. We therefore conclude, as did the trial judge, that the taxpayer was not entitled to claim the permanent loan deed of trust exemption.

 In so holding, however, our analysis is somewhat different from that articulated by the judge in her written opinion. The judge concluded that the exemption is not available, as a matter of law, if no recordation tax was paid when the prior construction loan was recorded, even where, as in this case, no tax was due on that prior recordation. We do not agree with this reading of the statute.

In reaching her conclusion, the trial judge relied on the following comment in the legislative history:

> We find this argument unpersuasive. The 1981 technical amendment merely removed the three-year temporal limitation from § 45–922(11). The Council did not address any other limitation on the availability of the permanent loan deed of trust exemption. Significantly, the amendment did not change any of the language on which we have based our conclusion that a direct link is required between the construction loan and the permanent loan. *See generally* COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON FINANCE AND REVENUE, REPORT ON BILL NO. 4–174, THE "TECHNICAL AMENDMENTS TO THE DISTRICT OF COLUMBIA REVENUE ACT OF 1980 ACT OF 1981," at 3 (Oct. 6, 1981) (discussing temporal focus of amendment to § 45–922(11) and employing language suggesting direct link between construction loan and subsequent permanent loan).

10. Moreover, as the trial judge recognized, "the Committee comment ... most strikingly does not use the same terminology as the

The legislation also provides that if the debt is refinanced, the tax will apply only to the amount that exceeds the amount of the original deed of trust, unless no tax was paid on the original deed of trust.

COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE OF THE WHOLE, REPORT ON BILL NO. 10–575, THE "OMNIBUS BUDGET SUPPORT ACT OF 1994," at 16 (Mar. 22, 1994). The Council's comment, however, referred to the refinancing exemption, not to the permanent loan deed of trust exemption.[10] It therefore sheds little light on the availability *vel non* of the permanent loan deed of trust exemption. We also think it significant that the District's Department of Finance and Revenue, which is the agency responsible for the Act's implementation, has consistently instructed taxpayers that the permanent loan deed of trust exemption is available where a post–1980 permanent loan has replaced a pre–1980 construction loan, even though no recordation tax was due on the earlier transaction. *See* Instruction E, General Instructions to D.C. Document Recording Form FP 7.[11]

enacted statute." Although legislative history has its place in statutory interpretation, we essentially agree with the judge that "the task before the [c]ourt is not to 'construe' committee comments: the judicial task is to construe statutory language on its face." If, as the judge recognized, the statement in the legislative history should not be used to construe the exemption to which it referred, then it is even less helpful in construing a different exemption.

11. After repeating the statutory provision concerning tax due on the amount by which a permanent loan deed of trust exceeds the preceding construction loan deed of trust, Instruction E provides, in pertinent part, as follows:

> "If the construction loan deed of trust ... is recorded before August 1, 1980, and the p[er]manent loan deed of trust ... is recorded after August 1, 1980, and substantially the same real property is conveyed

We do not believe that the statutory language compels a different result. Reasonably interpreted, the requirement that "the tax on the construction loan deed of trust ... has been timely and properly paid," D.C.Code § 45–922(11) was designed to address a situation in which a taxpayer was required to pay a tax but failed to do so. Where, at the time of recordation, the statute itself did not impose any tax liability, there has been no such failure on the part of the taxpayer. The statute does not require that "*a tax*" on the construction loan deed of trust have been paid; if that were the dispositive language, then the trial judge's construction might well have been correct. But the statute, in the subchapter dealing specifically with the "Recordation Tax," refers expressly to "*the* tax on the construction loan deed of trust." *Id.* (emphasis added). We are unwilling to hold that "*the* tax" was not "timely and properly paid" in a situation where "*the* tax" due (that is, the recordation tax) was zero. *Id.* (emphasis added). If the 1995 permanent loan had directly replaced the preceding construction loan, then, as we see the case, the permanent loan deed of trust exemption would have been available to the taxpayer—as it indeed was when 19th Street Associates first refinanced its construction loan in 1981 and only paid a recordation

tax of $15,000.00 on the $1,500,000.00 by which the permanent loan exceeded the prior construction loan.[12]

### B. *The refinancing exemption.*

The refinancing exemption is found in D.C.Code § 45–923(a)(3). That provision imposes a 1.1% tax on the recordation of security interest instruments, but states:

> [W]hen existing debt is refinanced, the recordation tax shall only apply to the amount of any new debt incurred over and above the amount of the principal balance due on existing debt if the existing debt was ... subject to taxation under this paragraph.

*Id.* The foregoing language imposes two requirements which must be satisfied for a deed of trust to qualify for the refinancing exemption. First, the deed must be a security interest instrument. *Id.* Second, the "existing debt" must have been "subject to taxation under this paragraph."[13] *Id.*

With regard to the first requirement, the trial judge concluded that the 1995 deed was indeed a security interest instrument. As the judge stated in her written order,

> [t]he January 31, 1995 instrument refinanced an existing permanent loan deed

---

> thereby by the same persons (mortgagors), *the taxpayer's liability for the tax will be measured only by the amount that the permanent loan deed of trust ... exceeds the construction loan deed of trust.*"
> (Emphasis added.)

12. Our disagreement with a part of the judge's analysis does not affect the result in Case No. 1, but it has significant potential consequences for Case No. 2. See Part V B, *infra.*

13. The refinancing exemption also applies "if the existing debt was a purchase money mortgage or purchase money deed of trust." D.C.Code § 45–923(a)(3). The Act defines a

"purchase money mortgage or purchase money deed of trust" as "a mortgage or deed of trust provided as payment or part payment of the purchase price of real property." *Id.* § 45–921(12). It is undisputed, however, that the taxpayer already owned the 19th Street property that it used to secure the 1995 permanent loan when that loan was obtained. Thus, the 1995 deed of trust was neither a purchase money mortgage nor a purchase money deed of trust. Consequently, if the refinancing exemption is to apply, this must be so because the "existing debt was ... subject to taxation under this paragraph." *Id.* § 45–923(a)(3).

of trust, to the tune of $22,000,000.00. Refinancing statements are included in the definition of security interest instruments. *See* D.C.Code § 45–921(14)(D). The 19th Street instrument is a security interest instrument because it is a refinancing statement that creates an encumbrance on real property[, namely on the 19th Street property owned by 19th Street Associates.]

(Footnote omitted.) We agree.

 The trial judge also held, however, that the second requirement, namely, that the "existing debt ... was subject to taxation under this paragraph," D.C.Code § 45–923(a)(3), has not been satisfied.[14] That existing debt, refinanced through the 1995 permanent loan and evidenced in the 1995 deed of trust, was the 1981 permanent loan in the amount of $23,500,000.00. When the taxpayer recorded the 1981 permanent loan deed of trust, it paid the $15,000.00 recordation tax due on the amount by which the 1981 loan exceeded the prior construction loan. That tax, however, was imposed by D.C.Code § 45–923(a) (1981), and not by § 45–923(a)(3). Consequently, the trial judge correctly concluded that "the 19[th] Street 1995 recordation does not qualify for a refinancing exemption under D.C.Code § 45–923(a)(3) because the existing debt, the January 1981 permanent loan deed of trust, was not subject to tax under section [45–]923(a), paragraph 3."

The taxpayer characterizes this conclusion as "the [t]rial [c]ourt's novel interpretation" of the Act's numbering scheme, and

argues that "most legal practitioners would take exception to the designation of item (3) as a paragraph, rather than as a 'sub-paragraph.'" We do not agree. Even assuming, *arguendo*, that the reference to "this paragraph" in D.C.Code § 45–923(a)(3), standing alone, is ambiguous, and even if the provision could plausibly be construed in the manner urged upon us by the taxpayer, a reading of the entire Omnibus Budget Support Act of 1994 (the "Omnibus Act"), D.C. Act. No. 10–225, 41 D.C.Reg. 2096–2112 (1994),[15] supports our conclusion that the trial judge correctly parsed the statutory language and its complex hierarchy of letters, numbers, and parentheses. With regard to § 45–923, the Omnibus Act states that "[s]ubsection (a) is amended." 41 D.C.Reg., *supra*, at 2099. While the Act does not explicitly state that item (3) of that subsection is a "paragraph," its definition of item (a) of § 45–923 as a subsection makes it illogical to treat item (3) as a "sub-paragraph." It is not reasonable to suppose that the Council meant to create a statutory hierarchy in which a section (*i.e.*, § 45–923) is followed by a subsection (*i.e.*, § 45–923(a)), which, in turn, is followed by a sub-paragraph (*i.e.*, § 45–923(a)(3)), with no intervening paragraph separating the subsection from the sub-paragraph.

A review of the Omnibus Act's references to other sections it amended discloses that the Council interpreted the hierarchy of sections, subsidiary paragraphs, and sub-paragraphs just as we do. For example, the Omnibus Act's amendments

---

**14.** We conclude that the 1981 deed of trust could not have been subject to taxation "under this paragraph," D.C.Code § 45–923(a)(3), for "this paragraph" did not exist in 1981 and cannot be found in the 1981 Act. *See* D.C.Code § 45–923 (1981). We need not address a question that the trial judge found dispositive, namely whether a change in the tax rate imposed by "this paragraph" from

1.0% to 1.1% would render a subsequent refinancing ineligible for the refinancing exemption. D.C.Code § 45–923(a)(3).

**15.** The Omnibus Act contained the 1994 amendments to the Recordation Tax Act, including the amendments to § 45–923 that are at issue here.

to § 47–1803.3 are described as follows: "D.C.Code § 47–1803.3(a) ... is amended by adding a new paragraph (16)." 41 D.C.Reg., *supra*, at 2101. Consequently, the item at § 47–1803.3(a)(16) is considered a paragraph. By analogy, D.C.Code § 45–923(a)(3)'s reference to "this paragraph" must also refer to item (a)(3) of that section.[16]

In order to be entitled to avail itself of the refinancing exemption in connection with the 1995 deed of trust, the taxpayer must show that its 1981 loan (that is, the "existing debt," D.C.Code § 45–923(a)(3)) was subject to taxation under D.C.Code § 45–923, subsection (a), paragraph (3). When the 1981 loan and deed of trust were recorded, however, § 45–923 contained a subsection (a), but that subsection was not divided into further paragraphs. D.C.Code § 45–923 (1981). Consequently, 19th Street Associates cannot demonstrate that it was "subject to taxation *under this paragraph*," *i.e.*, under D.C.Code § 45–923(a)(3) (emphasis added), and the trial judge correctly concluded that the 1995 deed of trust was not exempt from the recordation tax under the refinancing exemption.[17]

## V.

### CASE NO. 2

In Case No. 2, the District appeals from the award of summary judgment in favor of L Street Associates. The trial judge

was of the opinion that the taxpayer's 1995 recordation of the leasehold deed of trust securing its permanent loan was not subject to the District's recordation tax. We conclude that the leasehold deed of trust recorded by L Street Associates was a security interest instrument, and that it was therefore subject to the recordation tax. The 1995 deed of trust may, however, be partially exempt from the recordation tax under the permanent loan deed of trust exemption.

A. *The taxability of the leasehold deed of trust under the Recordation Tax Act.*

The trial judge reached her conclusion that the 1995 deed of trust was not subject to the recordation tax for two reasons. First, she concluded that the ninety-nine-year lease at issue here was not a deed under the Act. Second, she held that the 1995 leasehold deed of trust did not transfer a "security interest" because the ninety-nine-year lease securing the loan merely constituted "the *right to use* the real property, not ... real property itself." (Emphasis in original.) The judge therefore also ruled that the 1995 deed of trust was not a security interest instrument as defined in § 45–921(14).

 The judge's first conclusion is mandated by the plain language of D.C.Code § 45–921(3)(B). That section states that "[t]he word 'deed' shall not include ... a lease with a term of 99 years

16. We also note that the Omnibus Act's amendment to § 45–922 is described as "amend[ing]" "Paragraphs (5) and (6)." 41 D.C. Reg., *supra*, at 2097. While § 45–922 has an internal numbering scheme that differs slightly from the one employed in § 45–923, in that § 45–922 does not contain lettered subsections, the above phrasing lends further support to our conclusion that numbered items contained in sections amended by the Omnibus Act are considered paragraphs (rather than sub-paragraphs).

17. 19th Street Associates contends that taxation of the 1995 recordation subjects it to illegal double taxation. We do not agree. No double taxation occurred here, for the transaction taxed in 1995 is a different one from that taxed in 1981; two different loans were involved. As the District points out in its brief, "presumably a taxpayer will not refinance unless, taking all its costs into account, including payment of the District's recordation tax, refinancing will be financially advantageous."

or less." *Id.* Therefore, L Street Associates' ninety-nine-year lease cannot be a "deed" for recordation tax purposes.

But the judge's view that the lease securing the 1995 deed of trust was not a deed does not resolve the question whether the recordation of the leasehold deed of trust (rather than of the lease itself) was subject to the recordation tax. Under the Act as amended in 1994, the recordation of a security interest instrument is subject to the recordation tax. *Id.* § 45–923(a). If the leasehold deed of trust was a security interest instrument, then its recordation was taxable. This was so regardless of whether or not recordation of the underlying lease would be a taxable event.[18]

The Act defines a "security interest instrument" as "any instrument which conveys, vests, grants, transfers, bargains, sells, or assigns a security interest in real property." *Id.* § 45–921(14). A "security interest" is defined as "any interest in real property for the purpose of securing payment of a debt." *Id.* § 45–921(13). Finally, "real property" means "every estate or right, legal or equitable, present or future, vested or contingent in lands, tenements, or hereditaments located in whole or in part within the District." *Id.* § 45–921(4).

There can be no doubt that the 1995 leasehold deed of trust constituted an assignment of a security interest in the taxpayer's ninety-nine-year lease of the L Street property. *See id.* § 45–921(14). That interest was assigned "for the purpose of securing payment of a debt," namely of the permanent loan with which L Street Associates in 1995 refinanced its 1970 construction loan. *Id.* § ·45–921(13). Thus, if an interest in a ninety-nine-year lease is an "interest in real property," *id.* § 45–921(13), (14),[19] then the leasehold deed of trust was a "security interest instrument" under the Act. The trial judge determined that the lease was not real property, and she ruled in the taxpayer's favor on that basis. We conclude, however, that the ninety-nine-year lease in which the taxpayer's deed of trust transferred a security interest constituted "real property" as that term is defined in the Act.

The statute does not state in so many words that a lease, including one of ninety-nine years or less, falls within its definition of "real property." The statutory definition, however, broadly includes "every estate or right ... in lands, tenements, or hereditaments located in whole or in part within the District." D.C.Code § 45–921(4). The only "reasonable construction" of that language, *Acme Reporting Co., supra,* 530 A.2d at 712, is that a lease, and especially one for a term of ninety-

---

18. It may seem counterintuitive for the legislature not to impose a recordation tax on the recordation of a ninety-nine-year lease, but to impose such a tax where the same lease is used to secure a debt obligation, The Act, however, differentiates between the two events and treats them differently. We are, of course, constrained to abide by the statutory language in addressing L Street Associates' tax obligation under the Act; we cannot rewrite the statute to make it more "reasonable." *Cf. Iselin v. United States,* 270 U.S. 245, 250–51, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (Brandeis, J.) ("To supply omissions [in statutory language] transcends the judicial function.").

19. It is undisputed that the 1995 loan was secured both by L Street Associates' leasehold interest and by its ownership interest in the commercial building that it had constructed on the L Street property. At this point in the case, neither party has addressed the significance, if any, that securing the deed of trust partially with the taxpayer's ownership interest may have had on whether the deed of trust was a security interest instrument. In our view, it appears indisputable that an ownership interest in a commercial building would be a "right ... in [a] tenement[ ]" and thus "real property" as defined in D.C.Code § 45–921(4).

nine years, is included in that definition because it is an "estate or right ... in land[ ]." D.C.Code § 45–921(4). As a matter of common sense, it is surely indisputable that one who has a ninety-nine-year lease on a parcel of land has a significant interest in real property. Furthermore, if the drafters of the Act's definition of "real property" had not intended to include a lease, it would have been unnecessary for them to craft a specific exclusion for a "lease with a term of 99 years or less" from the definition of the term "deed"—a term which refers to an instrument that transfers specified interests in *"real property."* *Id.* § 45–921(3) (emphasis added); *see also Acme Reporting Co., supra,* 530 A.2d at 713.[20] That such leases were specifically excluded from the definition of a deed supports our conclusion that a lease is "real property" for purposes of the Act.

 The taxpayer contends that a lease cannot be "real property" because, unlike the "lands, tenements, or hereditaments" mentioned in the statute, D.C.Code § 45–921(4), a lease is not capable of being held in fee simple. But as we have noted, "real property" is broadly defined as "every estate or right ... in lands." *Id.* The instrument at issue falls well within that definition.[21] The trial judge distinguished between "the *right to use*" the L Street

property and the L Street property itself, (emphasis in original), but this distinction is not dispositive in determining whether a lease is "real property" under the Act. The statutory definition, which we have quoted above, establishes that it is precisely the *"right to use"* the property that makes the lease "real property."

Our conclusion that a lease constitutes "real property" under the Act finds further support in judicial authority construing similar definitions. For example, a Michigan statute defines "[t]he words 'land', 'lands', 'real estate' and 'real property' [to] mean lands, tenements and real estate, and all rights thereto and interest therein." Mich.Stat.Ann. § 12.212(9) (Michie 2000) (MCL § 8.3i). The same definition, in a prior version of the statute, was held to include a lease. *Minnis v. Newbro–Gallogly Co.,* 174 Mich. 635, 140 N.W. 980, 982 (1913). As noted in a leading commentary, statutes that define real property as lands, tenements, and hereditaments and all estates, rights, and interests therein "in effect[ ] define leasehold interests as real property." POWELL ON REAL PROPERTY, *supra* note 21, § 16.02[2].

Our determination that the taxpayer's ninety-nine-year lease constitutes real property leads inexorably to the conclusion

---

**20.** In full, the Act defines "deed" as

any document, instrument, or writing, including a security interest instrument, wherever made, executed, or delivered, pursuant to which:

(i) Title to *real property* is conveyed, vested, granted, bargained, sold, transferred, or assigned;

(ii) An interest in *real property* is conveyed, vested, granted, bargained, sold, transferred, or assigned;

(iii) A security interest in *real property* is conveyed, vested, granted, bargained, sold, transferred, or assigned; or

(iv) A transfer of an economic interest in *real property* is evidenced pursuant to § 45–922.2.

D.C.Code § 45–921(3)(A) (emphasis added). Section 45–921(3)(B) then specifically states that "[t]he word 'deed' shall not include a will or a lease with a term of 99 years or less."

**21.** The taxpayer asserts that, at common law, a lease was sometimes considered personal property. *See, e.g., Second Realty Corp. v. Fiore,* 65 A.2d 926, 927 (D.C.1949). A statutory definition may, however, supersede the common law. *See generally* 2 POWELL ON REAL PROPERTY (MB) § 16.02[2] (Sept.1994) (discussing statutory changes to common law categorization of leases as personal property).

that the taxpayer's recording of the 1995 deed of trust was subject to the recordation tax.[22] The instrument "transferred" an "interest in real property," D.C.Code § 45–921(13), (14), namely, the taxpayer's ninety-nine year "possessory interest" in the L Street property. *See* POWELL, *supra* note 21, § 16.02[2] (defining "lease" as creating an "estate," that is, a "possessory interest in land," in the tenant and citing RESTATEMENT OF PROPERTY § 9 (1936)). That interest was "acquired [by the lender] for the purpose of securing payment of a debt." D.C.Code § 45–921(13). Finally, the definition of a "security interest instrument" specifically includes "deed[s] of trust" and "refinancing statement[s]." *Id.* § 45–921(14)(B), (C). We therefore conclude that the 1995 leasehold deed of trust was a security interest instrument as defined in the Act, and that its recordation was consequently taxable.

B. *Permanent loan deed of trust exemption.*

In the alternative, L Street Associates contends that even if the 1995 deed of trust was subject to taxation under the Act, it was nevertheless partially exempt under the permanent loan deed of trust exemption. D.C.Code § 45–922(11). According to the taxpayer, this is so because the 1995 permanent loan replaced the 1970 construction loan. Consequently, the taxpayer claims to be entitled to a partial

$88,000.00 refund of the recordation tax that it paid in 1995.

We have concluded, in our discussion of Case No. 1, that the trial judge's ruling denying 19th Street Associates the benefit of the permanent loan deed of trust exemption was based on an incorrect construction of the statute. See Part IV A, *supra*. In this case, as in Case No. 1, the fact that the taxpayer did not pay a recordation tax at the time the 1970 construction loan was recorded does not necessarily make L Street Associates ineligible for the permanent loan deed of trust exemption. In 1970, no recordation tax was due on a construction loan, D.C.Code §§ 45–722(5), 45–723 (1967), and the taxpayer therefore did not violate any obligation to pay such a tax. In addition, the taxpayer in Case No. 2 does not face the problem that made its counterpart in Case No. 1 ineligible for the permanent loan deed of trust exemption. Unlike 19th Street Associates' second permanent loan at issue here, L Street Associates' 1995 permanent loan directly replaced an immediately preceding construction loan; there was no intervening permanent loan.

The question whether L Street Associates is entitled to claim a permanent loan deed of trust exemption in the specific context of this case may turn, however, on matters that have not been adequately explored in the trial court or, for that matter, in the parties' appellate briefs.[23] We are

22. L Street Associates recognizes in its brief that "whether the 1995 L Street Trust is subject to recordation tax depends on whether the Lease constitutes 'real property' within the meaning of" the Act.

23. Our discussion of this issue in Case No. 1 is not necessarily dispositive with regard to Case No. 2 in relation to L Street Associates' eligibility for the permanent loan deed of trust exemption. We note, for example, that the Act defines a "permanent loan deed of trust" as a "deed of trust ... *upon real estate*," not

upon real property. D.C.Code § 45–921(10) (emphasis added). The parties have not addressed the question as to whether the terms "real estate" and "real property" are interchangeable. In addition, the 1995 deed of trust was secured not only by L Street Associates' leasehold interest in the L Street property, but also by its ownership interest in the commercial building it built on that property; we express no opinion as to the legal consequences, if any, of this fact. Finally, according to the District, L Street Associates has failed to demonstrate that its 1995 deed of

therefore reluctant to resolve the issue, in the first instance, at the appellate level. Accordingly, we remand Case No. 2 to the trial court for further proceedings.

and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

## VI.

### CONCLUSION

In Case No. 1, the judgment is affirmed. In Case No. 2, the judgment is reversed,

trust satisfies certain other requirements for availability of the permanent loan deed of trust exemption that are set forth in § 45–922(11). If necessary, these issues should be addressed, at least initially, by the trial court.